**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

ISRAEL NAPHTALI,
CLARISSA FORD, as mother and next friend of minor children, Plaintiffs J.D., A.S. and A.C.,

     Plaintiffs,

v.

CITY AND COUNTY OF DENVER, COLORADO, a municipal corporation;
JEFF HAUSNER, in his official and individual capacity;
TIMOTHY LUKE, in his official and individual capacity;
MATTHEW WOLFE, in his official and individual capacity;

     Defendants.

---

**COMPLAINT AND JURY DEMAND**

---

     Plaintiffs, by and through their attorneys David Lane, Darold Killmer and Liana Orshan of KILLMER, LANE & NEWMAN, LLP respectfully alleges for their Complaint and Jury Demand as follows:

**<u>INTRODUCTION</u>**

     1.     This is an action against Denver and several Denver police officers alleging violations of the Fourth and Fourteenth Amendments to the United States Constitution. The Defendants had two encounters with the Plaintiffs. The first was when Sergeant Hausner unlawfully seized at gunpoint and severely traumatized three African-American children sitting in a legally parked car in a Safeway parking lot waiting for their step-father to finish grocery shopping. Sergeant Hausner pointed guns at the children who had done absolutely nothing but quietly sit in a parked car and waited for their stepfather. When Mr. Israel came out of the

Safeway store, Officers Luke and Wolfe handcuffed and searched him.  This was all done without reasonable suspicion or probable cause that any crime had been committed.

2.      Responding to a report from the Safeway manager that there was a black man sitting in the parking lot alone in a car with a gun, one officer drew his weapon and pointed it at the children while barking orders at them, when all they were doing was sitting in a parked car waiting for their stepfather.  J.D., the 14-year-old was so frightened she literally wet her pants.  Both she and her 7-year-old sister, A.S., are now in psychological counseling after the officer pointed his gun at them for no discernable reason.  Their stepfather, Mr. Naphtali Israel, was stopped by the other two officers who had their hands on their guns as he left the store.  He was handcuffed and searched for a weapon.  Finding none, the officers released him.  All the Plaintiffs were seized without probable cause or reasonable suspicion to believe they, or indeed, that *anyone,* had committed any crime.  All were the victims of excessive force by the defendants and all were targeted based upon their race.

## JURISDICTION AND VENUE

3.      This action arises under the Constitution and laws of the United States and is brought pursuant to 42 U.S.C. § 1983. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. § 1331.

4.      Jurisdiction supporting Plaintiff's claim for attorney fees and costs is conferred by 42 U.S.C. § 1988.

5.      Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b). All of the events alleged herein occurred within the State of Colorado, and all of the parties were residents of the State at the time of the events giving rise to this Complaint.

## PARTIES

6.      At all times relevant to this complaint, Plaintiff Naphtali Israel was a citizen of the United States of America and a resident of and domiciled in the State of Colorado.

7.      Plaintiff J.D. brings this action by and through their legal guardian and mother, Clarissa Ford.  J.D. is a citizen and resident of Colorado.

8.      Plaintiff A.S. brings this action by and through their legal guardian and mother, Clarissa Ford.  A.S. is a citizen and resident of Colorado.

9.      Plaintiff A.C. brings this action by and through their legal guardian and mother, Clarissa Ford.  A.C. is a citizen and resident of Colorado.

10.     Defendant City and County of Denver, Colorado, is a Colorado municipal corporation, and enforces local and state law through its law enforcement agencies, including the Denver Police Department.

11.     At all times relevant to this Complaint, Jeffrey Hausner was a citizen of the United States and a resident of Colorado and was acting within the scope of his official duties and employment and under color of state law in his capacity as a law enforcement officer employed by the Denver Police Department.

12.     At all times relevant to this Complaint, Timothy Luke was a citizen of the United States and a resident of Colorado and was acting within the scope of his official duties and employment and under color of state law in his capacity as a law enforcement officer employed by the Denver Police Department.

13.     At all times relevant to this Complaint, Matthew Wolfe was a citizen of the United States and a resident of Colorado and was acting within the scope of his official duties

and employment and under color of state law in his capacity as a law enforcement officer employed by the Denver Police Department.

## FACTS[1]

14.     Naphtali Israel, an African-American man, and his three step-daughters ages 14, 7 and 2 were grocery shopping at a Safeway in Denver on May 7, 2020.

15.     In the store, Mr. Israel instructed his 14-year-old stepdaughter, J.D., and his 7-year-old stepdaughter, A.S. to go get snacks, which they did.

16.     Mr. Israel continued to shop, wheeling his 2-year-old stepdaughter, A.C., seated in the cart seat. A.C. was getting fussy so Mr. Israel told the other children he was going to pay for their snacks and take them to the car to wait for him to finish shopping.

17.     Mr. Israel paid for the snacks then proceeded to his legally parked car and opened the driver door, watched the children get in the vehicle and told them to keep the doors open because he did not want them sitting in the car and getting overheated. He told them he would be right back and went back into the store to complete shopping.

18.     As he was paying for his groceries, an unknown African-American woman ran into the store frantically saying that she needed to "find the dad" and "where is the dad?"

19.     Mr. Israel walked over to the agitated woman and said, "Excuse me I'm a dad. Is there something wrong?" She responded that the police were outside "holding your children at gunpoint." He then ran for the exit.

---

[1] For the sake of continuity and brevity, all facts in support of and relevant to Plaintiffs' *Monell* claim are included in a supplemental **Exhibit 1** filed contemporaneously with this Complaint. All statements of fact included in **Exhibit 1** are hereby incorporated into this Complaint by reference as though fully set forth herein.

20.     Upon exiting, he could see several police vehicles and three Police officers.  One had his gun pointed at Israel's vehicle containing his children.  Sergeant Hausner was pointing his gun at the children yelling commands.

21.     Israel approached the officers yelling inquiries at them in great fear for the lives of his children. All three police officers turned toward him with their hands on their guns, ordering him to stop. Israel asked what was happening?  They yelled commands for him to put his hands behind his back.  He complied out of fear of getting killed and placed his hands behind his back.

22.     An officer (either Defendant Luke or Wolfe) handcuffed him, searched him, and then after approximately two minutes, finding no weapon, released him.

23.     Israel and his children were in great fear and were deeply traumatized by these events.  The older child wet herself while under a Denver Police gun.  Both she and her 7-year-old sister are receiving psychotherapy for the trauma they suffered.

24.     The 911 call triggering the police involvement essentially consisted of the store manager saying "Can you guys just do a quick drive by here?  I'm told there's a black guy in a white hoodie sitting in a Cadillac by himself in the parking lot and he has a gun."  There was no reported emergency, threat or any other alarming information.  Indeed, sitting in a car with a gun is not a crime, violation, or petty offense of any sort, even if you are "a black guy."

25.     Because pointing a gun at someone is a "use of force" it is deemed excessive if the police have no probable cause to believe a crime has been committed and that they are at personal risk.  Here, the only report was of a "black man, white hoodie, alone in a car" none of which is a crime.  There was no indication that the Sergeant who pulled the gun on the children

was in any danger whatsoever, yet innocent children for absolutely no reason were held at

gunpoint and a black man leaving a store doing absolutely nothing while not in a white hoodie or

sitting in a car, was cuffed and searched.

26.     The incident may be viewed here and the bodycam video was provided by

Denver. https://www.dropbox.com/sh/yjpq4a9jj550vuk/AADGRs1Dc-

suTku06e61cCoea?dl=0&preview=Israel+Video+for+Media+3.1.mp4

## STATEMENT OF CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
*42 U.S.C. § 1983 – 4th and 14th Amendments*
*Unlawful Seizure*
**All Plaintiffs against All Defendants**

27.     Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set

forth herein.

28.     At all times relevant to this Complaint, Defendants were acting under the color of

state law.

29.     Defendants did not at any time have probable cause or reasonable suspicion, or

any other legally valid basis, to believe that Plaintiffs had committed or were committing any

violation of the law prior to seizing and detaining them.

30.     Defendants did not at any time have a reasonable basis for believing that Plaintiffs

were a danger to themselves or others.

31.     Defendants did not at any time have a warrant authorizing any such search,

seizure, and/or detention of any Plaintiffs' body or belongings.

32.     Defendants, acting in concert with one another, seized and detained Plaintiffs and

did not allow them to leave.

33.     During this seizure and arrest, Defendants detained Plaintiffs against their will, despite lacking any legally valid basis for their actions.

34.     At the time when Defendants arrested Plaintiffs without probable cause and searched Mr. Israel's person without reasonable suspicion, Plaintiffs' Fourth Amendment right to be secure in their persons from unreasonable searches and seizures was clearly established.

35.     Defendants violated Plaintiffs' clearly established Fourth Amendment rights by engaging in a false arrest and unlawful seizure that was objectively unreasonable in light of the facts and circumstances confronting them.

36.     None of the Defendant law enforcement officers took reasonable steps to protect Plaintiffs from the objectively unlawful arrest or seizure of the other Defendant officers, despite being in a position to do so. Each is therefore liable for the damages resulting from the objectively unlawful arrest and seizure used by the others.

37.     The acts or omissions of the individual Defendants were the moving force behind, and the proximate cause of the injuries sustained by Plaintiffs.

38.     Defendants were engaged in these acts pursuant to the formal or informal custom, policy and practice of the City of Denver, which encourages, condones, tolerates, and ratifies the false arrest and unlawful seizure of its citizens by law enforcement officers, as set forth in detail in attached **Exhibit 1**.

39.     This formal or informal custom, policy and practice of the City of Denver is so permanent and well settled as to constitute custom by high ranking officers, the Chief of Police of the City of Denver with final policymaking authority— and has been ratified by such policymakers.

40.     The acts or omissions of Defendants City of Denver caused Plaintiffs' damages.

## SECOND CLAIM FOR RELIEF
### *42 U.S.C. § 1983 – Fourth Amendment*
### *Unlawful Search*
### **(Plaintiff Naphtali Israel Against All Defendants)**

41.     Mr. Israel hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

42.     Defendants did not at any time have probable cause or reasonable suspicion, or any other legally valid basis, to believe that Mr. Israel had committed or was committing any violation of the law prior to seizing and detaining him and continuing to restrain him.

43.     Defendants did not at any time have a warrant authorizing any such search, of Mr. Israel's body or his belongings.

44.     Defendants, acting in concert with one another, unlawfully searched Mr. Israel's person after forcing him into handcuffs.

45.     At the time when Defendants arrested Mr. Israel without probable cause or reasonable suspicion and searched his person, Mr. Israel's Fourth Amendment right to be secure in his person from unreasonable searches was clearly established.

46.     Defendants violated Mr. Israel's clearly established Fourth Amendment rights by engaging in an unlawful search that was objectively unreasonable in light of the facts and circumstances confronting them.

47.     None of the Defendant law enforcement officers took reasonable steps to protect Mr. Israel from the objectively unlawful search by the other Defendant officers, despite being in a position to do so. Each is therefore liable for the damages resulting from the objectively unlawful search by the others.

48.     The acts or omissions of the individual Defendants were the moving force behind, and the proximate cause of the injuries sustained by Mr. Israel.

49.     Defendants were engaged in these acts pursuant to the formal or informal custom, policy and practice of the City of Denver which encourages, condones, tolerates, and ratifies the false arrest and unlawful seizure of its law enforcement officers as set forth in detail in attached Exhibit 1.

50.     This formal or informal custom, policy and practice of the City Denver is so permanent and well settled as to constitute custom by high ranking officers including the Chief of Police, with final policymaking authority— and has been ratified by such policymakers.

51.     The acts or omissions of Defendant City of Denver caused Mr. Israel damages.

**THIRD CLAIM FOR RELIEF**
*42 U.S.C. § 1983 - 4th & 14th Amendments*
*Excessive Force*
**(All Plaintiffs Against All Defendants)**

52.     Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

53.     At all relevant times hereto, the Individual Defendants were acting under the color of state law in their capacities as Denver law enforcement officers.

54.     All Plaintiffs had a protected Fourth and Fourteenth Amendment interest against being unreasonably seized and victimized by the use of excessive force at the hands of law enforcement personnel.

55.     No Individual Defendant at any time had a legally valid basis to seize Plaintiffs' persons under the circumstances and in the manner described more fully herein.

56.     The Individual Defendants unlawfully seized all Plaintiffs by means of excessive

physical force.

57.    The Individual Defendants had no warrant authorizing any seizure of all Plaintiffs.

58.    The Individual Defendants' actions were objectively unreasonable in light of the circumstances confronting them.

59.    All Plaintiffs had committed no crime (nor could any of the Individual Defendants have reasonably believed they had committed any such crime) that would legally justify the use of such force, they gave the officers no reason to fear for their safety, the children were obviously unarmed, Mr. Israel, even if armed, was doing nothing warranting a search, and none were resisting arrest or fleeing.

60.    Accordingly, the Individual Defendants' acts of pointing guns at the children and handcuffing Mr. Israel with their hands on their guns, constituted excessive force.

61.    The Individual Defendants engaged in these actions intentionally, willfully, and wantonly, demonstrating deliberate indifference to, and a reckless disregard for, Plaintiffs' constitutionally protected rights.

62.    Defendant Denver failed to properly train, supervise, and/or discipline its employees regarding the proper use of physical restraint and force, resulting in the use of excessive force. Defendant Denver  particularly failed to properly train, supervise, and/or discipline its employees regarding the constitutional limits on use of force, particularly regarding how to avoid engaging in racially biased or disproportionately aggressive policing as set forth in detail in attached Exhibit 1.

63.    All Plaintiffs have been and continue to be damaged by the Defendants'

unreasonable seizure and use of excessive force.  Plaintiffs have endured and continue to endure mental pain, humiliation, fear, anxiety, loss  of enjoyment of  life, loss of liberty, privacy, and sense of security and individual dignity, among other injuries, damages, and losses.

64.    Each Defendant's acts or omissions described herein, including the unconstitutional policy, procedure, custom and/or practice described herein, were the legal and proximate cause of all Plaintiffs' damages.

65.    At the time when the Defendants unlawfully seized them, all Plaintiffs had a clearly established constitutional right under the Fourth Amendment to the United States Constitution to be secure in their persons from unreasonable seizure through excessive force.

66.    The Defendants are not entitled to Qualified (or any other) Immunity.  Any reasonable law enforcement officer knew or should have known of this clearly established right.

67.    The Defendants' actions, as described above, were motivated by intent to harm all Plaintiffs.

68.    The Defendants' actions, as described herein, were undertaken intentionally, maliciously, willfully, wantonly, and/or in reckless disregard of all Plaintiffs' federally protected rights.

### FOURTH CLAIM FOR RELIEF
*42 U.S.C. § 1983 - Fourteenth Amendment*
*Denial of Equal Protection*
**(All Plaintiffs Against All Defendants)**

64.    Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

65.    Individual Defendants were acting under color of state law in their actions and inactions at all times relevant to this action.

66.     At the time of the complained of events, all Plaintiffs had the clearly established constitutional right to be free from racial discrimination in law enforcement by police officers and to enjoy the equal protection of the laws.

67.     All Plaintiffs race was a motivating factor in the Defendants' decisions to use excessive force, and in the decisions regarding how much force to use, against them. The Defendants acted with the purpose of depriving Plaintiff of the equal protection and benefits of the law, and equal privileges and immunities under the law, in violation of the Fourteenth Amendment.

68.     The Defendants treated All Plaintiffs less favorably than their similarly situated white counterparts, wholly or in part because of their race.

69.     There was no rational basis for Defendants' discriminatory actions, let alone a purpose narrowly tailored to serve a compelling governmental interest.

70.     The Defendants used excessive force against all Plaintiffs, as described herein, without reasonable suspicion or probable cause to believe any Plaintiffs had committed a crime or posed a threat of harm or fleeing that would legally justify the level of force used.

71.     The Defendants intentionally, willfully, unreasonably and wantonly seized all Plaintiffs by using excessive force against them, as described herein, wholly or in part due to their race.

72.     The Individual Defendants' actions were objectively unreasonable in light of the facts and circumstances confronting them.

73.     The Defendants engaged in these actions intentionally, willfully, and wantonly, demonstrating deliberate indifference to and reckless disregard of all Plaintiffs' federally

protected constitutional rights.

74.     Defendant Denver  failed to properly train, supervise, and/or discipline its employees regarding the constitutional requirement not to engage in racially biased policing, resulting in the Individual Defendants' unlawful seizure of all Plaintiffs and use of excessive force. Defendant Denver  particularly failed to properly train, supervise, and/or discipline its employees regarding the proper use of physical restraint and force against people of color, and the prohibition on using racially biased excessive force as is set forth more fully in attached Exhibit 1.

75.     Denver 's inadequate training, supervision, and/or discipline resulted from a conscious or deliberate choice to follow a course of action from among various alternatives available to Defendant Denver .

76.     In light of the duties and responsibilities of personnel of Defendant Denver   – who must police and interact with people of color on a regular basis – the need for specialized training, supervision and discipline regarding such decisions is so obvious, and the inadequacy of appropriate training and/or supervision is so likely to result in a violation of constitutional rights, such as those described herein, that Defendant Denver is liable for its failure to properly train, supervise, and/or discipline its subordinate employees and agents.

77.     Such failure to properly train, supervise, and/or discipline was a moving force behind and proximate cause of the Individual Defendants' racially biased treatment of all Plaintiffs, and constitutes an unconstitutional policy, procedure, custom, and/or practice.

78.     Defendant Denver 's failure to train and/or supervise, as described herein, was a legal and proximate cause of all Plaintiffs' injuries.

79.     As a direct and proximate result of Defendants' actions, all Plaintiffs have suffered and continue to suffer humiliation, emotional distress, loss of enjoyment of life, and other significant injuries, damages and losses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, and award him all relief as allowed by law and equity, including, but not limited to the following:

a.  Declaratory relief and injunctive relief, as appropriate;

b.  Actual economic damages as established at trial;

c.  Compensatory damages, including, but not limited to those for past and future pecuniary and non-pecuniary losses, physical and mental pain, humiliation, fear, anxiety, loss of enjoyment of life, loss of liberty, privacy, and sense of security and individual dignity, and other non-pecuniary losses;

d.  Punitive damages for all claims as allowed by law in an amount to be determined at trial;

e.  Issuance of an Order mandating appropriate equitable relief, including but not limited to:

    i.   Issuance of a formal written apology from each Defendant to Plaintiff;

    ii.  The imposition of appropriate policy changes designed to avoid future similar misconduct by Defendants;

    iii. Mandatory training designed to avoid future similar misconduct by Defendants;

    iv.  Imposition of disciplinary action against appropriate employees of

Denver;

    f.   Pre-judgment and post-judgment interest at the highest lawful rate;

    g.   Attorney's fees and costs; and

    h.   Such further relief as justice requires.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

DATED this 20th day of July 2020.

KILLMER, LANE & NEWMAN, LLP

*s/ David A. Lane*
_____

David A. Lane
Darold W. Killmer
Liana Orshan
1543 Champa Street, Suite 400
Denver, Colorado 80202
Phone: (303) 571-1000
Facsimile: (303) 571-1001
dlane@kln-law.com
dkillmer@kln-law.com
lorshan@kln-law.com

ATTORNEYS FOR PLAINTIFF